GLOBE NATIONAL BANK *vs.* SAMUEL INGALLS & others.

Suffolk. Nov. 19, 1878. — Jan. 28, 1879. COLT & MORTON, JJ., absent.

In an action by a bank on a promissory note, to which the defence was payment by a sale of bonds of a corporation held as collateral security, parol evidence was admitted, against the defendant's objection, to show that the bank held the bonds also as collateral security for a previous note, of which the note in suit was a renewal or was given as security, and that, having a claim against the bankrupt estate of an indorser of the previous note, the bank made an arrangement with the assignee in bankruptcy, by which the bonds were sold by public auction, the bank agreeing to bid a certain amount for them, and to prove the balance of the claim against the estate; that no one else bid any more, and the bank kept the bonds and proved the remainder of its claim. *Held,* that this evidence was admissible. *Held, also,* that the fact that the bank received a dividend from the trustees of the property of the corporation, to whom a mortgage had been given to secure the bonds, was not evidence tending to show that the bonds were actually sold by the bank.

CONTRACT upon a promissory note for $1045.75, dated April 27, 1876, payable six months after date to the order of Charles J. Sprague, cashier, and signed by the Winthrop Horse Railroad Company and by the defendants. Ingalls only appeared. Answer, a general denial, with allegations of payment of a note, for which this was given as collateral security.

At the trial in the Superior Court, before *Dewey,* J., the plaintiff put in evidence the note declared upon, and rested his case, agreeing that the sum of $52.18 should be allowed on the note, on account of a dividend received from the estate of Saunders, one of the indorsers of the original note, of which the note in suit was collateral security or a renewal, and also that the sum of $115.30 should be allowed on account of moneys received from O. A. Taft, who was the trustee named in the mortgage by which the bonds of the Winthrop Horse Railroad Company were secured.

It was agreed that the bonds of this railroad company, to the

amount of $9000, had been pledged to the plaintiff bank as collateral security for a note of $4000, and two notes of $1000 each, and that in payment thereof, or in renewal, new notes were given, of which the note in suit was one.

The defendant contended that the $9000 of bonds, given as collateral security, had been on March 14, 1876, sold by and purchased by the bank at twenty per cent of their par value, amounting to $1800, and that a portion of this sum, if there was a sale, (one ninth as admitted by the plaintiff, or one half as contended by the defendant,) should be allowed on the note in suit. The defendant put in evidence tending to show a sale of the bonds and a purchase thereof by the bank. The plaintiff contended that there had never been any real sale of the bonds; that all that was done in relation to a sale of the same was under an agreement made between the assignee in bankruptcy of Saunders, who was one of the indorsers of the original notes secured by the bonds, and the president of the plaintiff bank, and was for the purpose of agreeing on some amount which should be allowed as the value of the collateral security on the notes as against Saunders, so that the bank might prove for the balance against Saunders's estate in bankruptcy, and that the bank agreed with the assignees to call the value of the bonds twenty per cent of their par value, if no one offered more for them, and that they were, after being advertised, bid off for that amount to the brother of the president of the bank; but, although bid off, that there was no sale, and no delivery was ever made of said bonds, or any sum paid for them, and that the bonds had never been out of the possession of the bank.

O. A. Taft testified that he was trustee of the bonds of the Winthrop Horse Railroad Company, and had sold all the property, stables, cars, buildings, horses, etc., held by him under the mortgage securing these and other similar bonds, excepting five eighths of a mile of track in East Boston; and had received therefor $2470, from which amount he had paid the plaintiff the proportionate amount of the receipts as holder of the bonds.

One of the assignees of the estate of Saunders testified that the plaintiff bank proved against the estate of Saunders three notes made by the Winthrop Horse Railroad Company, two of the notes being for $1045 each, indorsed by Saunders, and dated

April 22, 1875, and May 1, 1875; that on these notes the estate paid $6\frac{93}{100}$ per cent, that is, on all above twenty per cent of the claim which was proved as secured to that amount. The plaintiff on cross-examination asked this witness whether it was not true that the question came up as to how much these bonds were valued at, in reference to proving the balance against the estate. The defendant objected to evidence of any conversation between the witness and his associates, or between the witness and the president of the bank, unless the conversation was in the presence of the defendant. The judge ruled that the plaintiff might show the real nature of the transaction; and, against the defendant's objection, the witness testified, that he made the arrangement with the president of the plaintiff bank, as to how much the bank should be allowed to credit on their claim, before proving on the balance; that the arrangement was that these bonds should be put up at public auction, the bank guaranteeing beforehand to make a bid of twenty cents on a dollar; that, if no one else bid any more, the bank was to apply that credit as common creditors; that the purpose was to ascertain a balance to prove against the Saunders estate.

The president of the plaintiff bank testified, that the bank received $9000 worth of Winthrop Horse Railroad Company's bonds as security for a loan of $6000; that these bonds had never been out of the bank's possession; that the bonds were put up by auction on March 14, 1876, and, although they were bid off, it was not a sale; and that no money ever passed.

The question as to whether there had been any sale of the railroad bonds was submitted to the jury, under instructions from the judge not objected to, except as hereafter stated, with the directions that, if they found there had been a sale of the bonds, they should allow on the note in suit, in addition to the $52.18 and $115.50 above mentioned, the sum of $200 or $900 as they found the bonds were held as collateral security for $6000 or for $2000.

The defendant requested the judge to rule that the fact of Taft's paying the bank the amount received from the sale of the security of the bonds was evidence tending to show a *bona fide* sale of the bonds to the plaintiff. The judge declined to rule as requested, stating to the jury that, if the plaintiff held the bonds as collateral security, it would be proper for them to receive any

payment thereon, and that from the fact of the receipt of said payment no inference could be drawn as to whether they held the bonds as collateral security, or as the owners thereof.

The jury returned a verdict of $803.52 for the plaintiff; and the defendant alleged exceptions to the refusal of the judge to rule as requested.

*E. C. Gilman*, for Ingalls.

*J. W. Hubbard*, for the plaintiff.

AMES, J.    At the trial, the defendant offered evidence tending to show a sale of the bonds and a purchase of them by the bank. The plaintiff denied that there had been any such sale, and contended that all that had been done in relation to the sale of the bonds was under an agreement between the bank and the assignees in bankruptcy of Saunders, one of the indorsers of the notes, for the purpose of determining upon some amount which should be treated as the value of the bonds that had been left as collateral security for the original loan, in order that the plaintiff might prove its claim for the balance against the estate of the bankrupt.    The plaintiff introduced evidence to the effect that there had been no actual sale, and that the bonds had never been transferred, or out of its possession.    And the plaintiff, against the defendant's objection, was permitted to show the real nature of the transaction, by proof of the particulars of the arrangement with the assignees, and that in fact it was an unsuccessful attempt to sell the bonds at auction.    We find no error on the part of the court in admitting this evidence.    An oral agreement could hardly be proved at all, except by evidence of what was said.

It appeared that the plaintiff had received, from the trustee to whom the property of the railroad corporation had been mortgaged to secure the payment of its bonds, certain sums of money arising from the sale of a portion of that property, which sums the plaintiff offered to allow on this trial in part satisfaction of its claim.    The defendant requested the court to rule that the receiving of this payment from the trustee was evidence tending to show a previous *bona fide* sale of the bonds to the bank.    This ruling the court refused to give, and we find no error in this refusal, or in the ruling that was given.    The plaintiff, whether it held the bonds as collateral security or as absolute owner,

might properly receive any payment that should be made thereon. The fact of receiving such payment therefore furnishes no ground for any inference whatever as to the question in which of those two capacities or relations it acted in so doing.

*Exceptions overruled.*