GLOBE NATIONAL BANK *vs.* SAMUEL INGALLS & others.

Suffolk. Nov. 12, 1879. — Nov. 23, 1880. MORTON & SOULE, JJ., absent.

In an action on a promissory note to which the defence was payment, it appeared that the plaintiff held certain railroad bonds as collateral security for another note, of which the note in suit was a renewal; that he sold these bonds by auction, and they were bought by his agent for twenty per cent of their face value. There was also evidence that the plaintiff made an agreement with the assignee in bankruptcy of another party to the first note to allow twenty per cent on the face value of the bonds as their real value, and it was agreed between them that the bonds should be sold by auction for any price above that percentage, and if they sold for less the plaintiff should keep the bonds and allow the percentage agreed upon. The plaintiff contended that the sale made was in pursuance of this agreement, and was not an actual sale of the bonds of which the defendant was entitled to avail himself. *Held*, that a ruling that there was no sale of the bonds by the plaintiff was erroneous; and that the question should have been submitted to the jury.

CONTRACT upon a promissory note for $1045.75, dated April 7, 1876, payable seven months after date to the order of Charles Sprague, cashier, and signed by the Winthrop Horse Railroad Company and by the defendants. Ingalls only appeared. Answer, that the note in suit was given as collateral security for a prior note which had been paid, without the defendant's knowledge, before the execution of the note in suit, and that therefore the note in suit was without consideration. Trial in the Superior Court, before *Brigham*, C. J., who reported the case for the determination of this court, in substance as follows:

The evidence upon the question of payment and want of consideration was uncontradicted, and was agreed to by both parties, as follows: The Winthrop Horse Railroad Company gave the plaintiff, for good consideration, a promissory note, dated May 1, 1875, made in renewal of a previous note for $1000, dated October 22, 1874, payable in seven months. Said note was indorsed by all the defendants, and one Saunders, and others, for which, and other notes not material to this report, $9000 in bonds of said railroad company, secured by a mortgage, were pledged as security. In July 1875, William A. Saunders, one of the indorsers on the note of May 1, before its maturity, filed his petition in bankruptcy. On November 15, 1875, another note was given, whether as collateral or in renewal of the note

of May 1 was in dispute, without Saunders's name, due April 28, 1876, and William B. Stevens, president of the plaintiff bank, gave the railroad company a receipt for this note (and for one other note due May 7, 1876, in no way connected with this case), of which the following is a copy: "Boston, Nov. 15, 1875. Received from Winthrop Horse R. R. Co. their two notes for one thousand dollars each, due Apr. 28, '76, and May 7, '76, as collateral for old notes, same amounts, unpaid. W. B. Stevens, Pres." The note of November 15, 1875, was taken up by the note in suit.

Before March 14, 1876, the president of the plaintiff bank instructed Joseph B. Hawes, a stock auctioneer, to offer said bonds for sale, and to sell by auction. They were accordingly advertised for sale, and on the appointed day, March 14, 1876, were put up for sale by Hawes, and were bid off at twenty cents on a dollar by the brother and agent of the president of the plaintiff bank, who directed him to bid them off if no higher bid than twenty cents was made.

On April 5, 1876, the president of the plaintiff bank, in its behalf, proved the note of May 1, 1875, against Saunders's estate in bankruptcy; and on this note received a dividend from Saunders's estate of $6\frac{90}{100}$ cents on a dollar, amounting to $72.10. The proof contained the following statement, made and sworn to by Stevens: "On these notes (dated April 22 and May 1, 1875) the bank held as collateral security nine thousand dollars of Winthrop Horse Railroad second mortgage bonds, which were sold under the power contained in said notes, and by agreement with the assignee of Saunders in bankruptcy, and proceeds credited, viz. $9000, at twenty cents, amounting to $1800." O. A. Taft, as trustee under a mortgage made to secure the payment of the bonds, sold certain stables, cars and horses, and paid the amount received, $2280, to the plaintiff bank on account of said bonds. At the time the note in suit was made, the defendant Ingalls was ignorant of the sale of the bonds as aforesaid, of the amount realized from Saunders's estate, and of the amount paid by Taft.

The plaintiff put in evidence that William B. Stevens, before March 14, 1876, made an agreement with one Monks, assignee of Saunders, to allow twenty cents on a dollar on the $9000

bonds, but that said bonds should be put up by auction and sold for any price above twenty cents on a dollar, and that he, Stevens, would bid twenty cents on the dollar for them, and, if there was no higher bid, that he, Stevens, would keep the bonds, and indorse the amount he bid on said Winthrop Railroad notes.

The defendant Ingalls contended that the note in suit was collateral security for the note of May 1; this the plaintiff denied, and this issue was submitted to the jury, under proper instructions, and they found that the note in suit, and the note preceding it, were renewals of the note of May 1. Upon the evidence reported, and this finding of the jury, the judge ruled, as matter of law, that there was no sale of bonds by the plaintiff, and that there was a valuable consideration for the note in suit; and ordered a verdict for the plaintiff for the full amount of its claim.

If this ruling and order were erroneous, a new trial was to be ordered; otherwise, judgment to be entered upon the verdict.

*E. C. Gilman*, for Ingalls.

*J. W. Hubbard*, for the plaintiff.

AMES, J. The only questions made by the defendant at the trial or in argument are, 1st, whether there was a sufficient legal consideration for the note in suit; 2d, whether it was correctly ruled at the trial, that, as matter of law, there had been no sale of the bonds held by the plaintiff.

1. It appears upon this report that the Winthrop Horse Railroad Company borrowed money of the plaintiff, giving in return its promissory notes, and depositing its own mortgage bonds to the amount of $9000 with the lender as collateral security. Some of these notes were not paid at maturity, and were several times renewed. In renewal of one of these notes, a new one was given, for the sum of $1045, dated May 1, 1875, payable in seven months. This new note was indorsed by all the defendants, and also by one Saunders, who became a bankrupt before its maturity. In November 1875, another note, for $1000, without Saunders's name, was given, which was not taken up at maturity; and the jury have found, under instructions not excepted to, that the note in suit and the November note were given in renewal of the note of May 1, 1875. There can be no doubt,

therefore, that the note in suit was on sufficient legal considera-tion, unless an inference to the contrary ought to be drawn from the dealings of the parties in relation to one or both of the previous notes. The November note was taken up by the one in suit.

2. It appeared that, after Saunders had gone into bankruptcy, an agreement was entered into between his assignee and the president of the plaintiff bank, in relation to the note of May 1, 1875, the effect of which, as the defendant contends, is that that note was wholly, or at least in part, paid, and that whatever was so paid upon that note should be credited towards the note in suit, the latter having been found to be a renewal of the former. There was evidence that, in the proof of a claim against the estate of Saunders, the plaintiff made a written statement that the bonds, which had been deposited as collateral security for the loan, had been sold by agreement with his assignee in bankruptcy and the proceeds credited at the rate of twenty cents on the dollar of their nominal amount. The plaintiff undertook to meet this evidence by proof that the transaction was not a real sale, but an unsuccessful attempt at a sale; that the object was to fix upon some amount as the unsecured balance provable upon that note against Saunders's estate, in order to share in whatever dividend might be paid by that estate; and that in fact the bank had not realized twenty per cent, or any other sum whatever, by the alleged sale of the bonds.

Upon the question whether there had been a sale of the bonds, the jury should have been allowed to pass, and it was an error to withdraw the case from them and direct a verdict for the plaintiff. It was not a question of law, but of fact, upon which the jury might find either way, according to the effect of the evidence upon their minds. *Globe National Bank* v. *Ingalls*, 126 Mass. 209. *New trial ordered.*